IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGQUAN J. CULBRETH, JR., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-3228 |
| | : | |
| PRIMECARE MEDICAL INC., *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                    **DECEMBER 21, 2023**

Dougquan J. Culbreth, Jr., a prisoner currently housed at SCI Camp Hill, has filed this civil rights action seeking money damages against Primecare Medical Inc. ("Primecare") and Dr. William Cattell, alleging he was denied medical care while he was a pretrial detainee at Lancaster County Prison ("LCP").[1]  Both Defendants are named in their individual and official capacities.[2] Culbreth also seeks leave to proceed *in forma pauperis*.  For the following reasons, the request to proceed *in forma pauperis* will be granted and the case will be dismissed.

---

[1]     The Court may consider publicly available records when conducting a statutory screening. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  Public records indicate that at the time of the incident described in the Complaint, Culbreth was housed at LCP as a pretrial detainee awaiting trial on robbery, assault, and related charges.  *See Commonwealth v. Culbreth*, CP-36-CR-0000008-2022 (C.P. Lancaster).  He entered a guilty plea to the charges on September 20, 2023.  *Id*.

[2]     Culbreth lists several other individuals in his Complaint, but asserts only that they are witnesses to the events he describes.  (Compl. at 9.)  Only Primecare and Dr. Cattell are named as Defendants.

I.      **FACTUAL ALLEGATIONS**[3]

Culbreth asserts that he broke his hand on July 21, 2023 during a fight at LCP. (Compl. at 4–5.) As of August 3, twelve days after the injury, and after not receiving a response to two grievances he filed about a lack of medical attention, he was seen by a nurse for x-rays of the hand. (*Id*. at 12.) The nurse referred Culbreth to go to the emergency room; once there, medical personnel questioned why he had not been seen earlier. (*Id*.) Additional x-rays determined the hand was fractured and surgery was recommended within the next two days due to the delay in treatment. (*Id*.) He arrived late to his next appointment due to delays at the prison, and the appointment had to be rescheduled. (*Id*.) When Culbreth saw the provider, his knuckle had "healed in the middle of [his] fist." (*Id*.) He feared he would have a permanent injury due to the delay. (*Id*.)

On August 4, 2023, Culbreth received a response to his grievance asserting that he was not seen by medical because he had not put in sick calls slips about his hand until that morning at 4 a.m. (*Id*. at 11.) Culbreth asserts he put in sick call slips on July 22 and July 23 and was seen on July 23 for a sick call slip about his allergies that he had put in before the injury occurred.[4] (*Id*.) At the July 23 appointment, he had mentioned his hand injury to the nurse, who prescribed Tylenol

---

[3] The facts set forth in this Memorandum are taken from Culbreth's Complaint (ECF No. 1), which consists of the Court's preprinted form available to prisoners to file civil rights cases as well as additional handwritten pages. The Court adopts the pagination assigned to the entire Complaint by the CM/ECF docketing system. The Court notes that the handwritten pages are in the form of a journal, presently recording events occurring over several days.

[4] While Culbreth mentions grievances in his Complaint, he does not appear to assert any claims based on the handling of his grievances. Even if he had intended to raise a claim based on grievances, that claim would not be plausible because "prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).

for five days and told him to see a provider within those five days. (*Id*.) He did not see a provider until August 6, after his emergency room visit. (*Id*. at 10) He admits that he lied about the fight causing the injury in his sick call slips, but insists he did file them and was neglected. (*Id*. at 11)

On August 7, 2023, eighteen days after the injury, Culbreth had still not had surgery or even a follow up appointment. (*Id*. at 10.) He asserts that when he was told in the ER that he should have surgery within two days, unidentified correctional officers who were present told him he should be able to get the treatment. (*Id*.) Culbreth alleges that one of the nurses present in the ER also worked at LCP. (*Id*.) He claims he cannot sleep due to the pain in his hand and medical personnel are not taking his problem seriously. (*Id*.) He fears he will have a permanently misplaced bone. (*Id*.)

On August 11, 2023, Culbreth was treated at Hershey Medical Center. (*Id*. at 8.) He was told his hand had started to heal with the pinky knuckle misplaced. (*Id*.) He alleges this could have been avoided if he received timely treatment, and he is now past the point where treatment would be effective. (*Id*.) Culbreth seeks money damages for a constitutional claim of deliberate indifference to his serious medical needs and for gross negligence. (*Id*. at 3–5.)

## II.  STANDARD OF REVIEW

The Court will grant Culbreth leave to proceed *in forma pauperis*.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "'At this early stage of the litigation,' '[the Court will]

---

[5]  Because Culbreth is a prisoner, he must still pay the full amount of the filing fee for this case in installments as required by the Prison Litigation Reform Act.

accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Culbreth is proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc*, 704 F.3d 239, 245 (3d Cir. 2013)).

### III.  DISCUSSION

Culbreth asserts a constitutional claim and a state law negligence claim based on his lack of treatment for his hand injury. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (citing, *inter alia*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A.  Official Capacity Claims

Culbreth has named Primecare and Dr. Cattell in their individual and official capacities. To the extent that Culbreath asserts an official capacity claim against Dr. Cattell as an employee of Primecare, that claim is not cognizable because Primecare is a private entity. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022)

(stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit") (citing *Owens v. Connections Cmty. Support Programs, Inc.*, 840 F. Supp. 2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit.")). Even if official capacity suits against individuals who work for private companies are cognizable, the suit would, in effect, be one against the company for whom that individual works. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Since Culbreth has named Primecare as a Defendant, the official capacity claim against Dr. Cattell is dismissed as duplicative of the claim against Primecare. *See Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 437 n.171 (E.D. Pa. 2020) (dismissing official capacity claim against employees of Primecare "as duplicative of the claims against . . . PrimeCare"), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023).

The "official capacity" claim against Primecare itself is also dismissed. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Since Culbreath assert a direct claim against Primecare, naming that entity in its official capacity as well is redundant. Accordingly, all official capacity claims are dismissed with prejudice.

    **B.**    **Individual Capacity Claims**

Culbreth's individual capacity claims against Primecare and Dr. Cattell cannot proceed as pled. Primecare, as the private corporation under contract to provide medical services at LCP, may be liable under § 1983 in certain circumstances. The United States Court of Appeals for the

Third Circuit has held that "a private health company providing service[s] to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)).  Rather, in order to hold a private health care company like Primecare liable for a constitutional violation under § 1983, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583–84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (internal quotations and citations omitted)).

A plaintiff may also state a basis for liability against an entity like Primecare by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*  Culbreth has not tied any of the conditions of which he complains to a custom or policy of Primecare to exhibit deliberate indifference to the serious medical needs of prisoners, nor has he alleged he was injured due to a failure to supervise, train, or discipline.  Accordingly, the claim against Primecare is not plausible as pled.

6

The claim against Dr. Cattell is also not plausible. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that a prison official was deliberately indifferent to his serious medical needs.[6] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). "Not every complaint of inadequate prison medical care rises to the level of deliberate indifference." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023). "Where a prisoner is receiving

---

[6] Culbreth was a pretrial detainee at the time of the events in question, thus the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Assuming that Culbreth's hand injury constitutes a serious medical need, he has failed to allege that Dr. Cattell was personally involved in refusing, delaying, or preventing him from receiving necessary medical treatment based on a non-medical reason. Other than name Dr. Cattell in the caption of the Complaint, Culbreth never mentions him in the body of the Complaint and includes no facts about how Dr. Cattell may be held liable for a constitutional claim. For this reason, the deliberate indifference claim must be dismissed.

### C. Negligence Claim

Culbreth also alleges a state law negligence claim against the Defendants. Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for

jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship. *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Jackson v. Rosen*, No. 20-cv-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Culbreth does not allege the citizenship of the parties. Rather, he provides only Pennsylvania addresses for himself at LCP and for the Defendants in Harrisburg, Pennsylvania, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, Culbreth has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Culbreth's Complaint. The official capacity claims will be dismissed with prejudice. Because it may be possible for Culbreth to cure

the defects the Court has identified in his other claims, they will be dismissed without prejudice and Culbreth will be granted an opportunity to file an amended complaint. An appropriate Order with additional instructions on amendment will be entered separately.

**BY THE COURT:**

/s/ Chad F. Kenney

**CHAD F. KENNEY, J.**